# UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

UNITED STATES OF AMERICA,

**CRIMINAL COMPLAINT**

MIGUEL MARTINEZ-GARCIA.

CASE NUMBER:  1:06-mj-314

*I, John A. Alpers, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief.  Between February 2001 and February 2006, in Grand Traverse County, in the Western District of Michigan, Southern Division, defendant did*

*unlawfully employ aliens, use a fraudulent immigration document, and possess false identification documents,*

*in violation of Title 8 United States Code, Section 1324(a)(1)(A) and Title 18 United States Code, Sections 1546(a) and 1028(a)(6).*

*I further state that I am a Special Agent for the Bureau of Immigration and Customs Enforcement and that this complaint is based on the following facts:*

**See attached affidavit**

*Continued on the attached sheet and made a part hereof:*  __X__ Yes  ___ No

_____
Signature of Complainant  JOHN A. ALPERS

*Sworn to before me and subscribed in my presence,*

March 10, 2006  *at*  Grand Rapids, Michigan

Date and Time Issued

**Honorable JOSEPH G. SCOVILLE**
*Magistrate Judge*

_____
Signature of Judicial Officer

# AFFIDAVIT

1.      Your Affiant, Special Agent John A. Alpers, is currently assigned to the U.S. Immigration and Customs Enforcement (ICE), Sault Ste. Marie, Michigan.  Your Affiant has been employed by ICE as a Criminal Investigator/Special Agent, for approximately 18 years. During his tenure with ICE (formally the U.S. Customs Service), your Affiant has been involved in well over 100 criminal investigations resulting in more than 100 Federal arrests and convictions for various Federal criminal violations, to include numerous Federal immigration offenses.

2.      The following information is provided for the purpose of establishing probable cause for criminal complaints and arrest warrants for Ofmara MALTOS-Trevino and Miguel MARTINEZ-Garcia.  In the matter of MALTOS-Trevino, Affiant submits that the following establishes probable cause to believe she knowingly used a false U.S. Resident Alien card, in violation of 18 U.S.C. § 1546(a), and also knowingly participated in the employment of illegal aliens, 8 U.S.C. 1324a(1)(A).  In the matter of MARTINEZ-Garcia, Affiant submits that the following establishes probable cause to believe he committed the same offenses, and also knowingly possessed false identification documents that appeared to have been issued by the United States, in violation of 18 U.S.C. § 1028(a)(6).  Because it is submitted for the sole purpose of establishing probable cause, this affidavit does not necessarily summarize all the information known to me at this time.

3.      In the Spring of 2005, your Affiant and others conducted two (2) undercover Operations which led to the discovery that Juanita SCHLAGEL, an employee of the State of Michigan, was selling Social Security Administration Numbers (SSAN) and Alien Registration numbers to illegal aliens from her office space at Michigan Works, Traverse City, Michigan. The undercover operations led to the issuance and execution of Federal search warrants upon SCHLAGEL's work cubicle located within Michigan Works and her home in Williamsburg, Michigan.

4.      On April 18, 2005, during the execution of the Federal search warrant upon SCHLAGEL's home, your Affiant and Detective Nathan Ritter, Grand Traverse Sheriff's Department, Traverse City, Michigan, conducted an interview of SCHLAGEL.  During the interview, SCHLAGEL alleged that a person identified as Santiago ECHANIZ is employed by a company doing business as "RCI, Inc.," a cleaning service subcontracted by the Grand Traverse Resort and Spa (GTRS) in Acme, Michigan.   According to SCHLAGEL, ECHANIZ and RCI have provided the GTRS with numerous undocumented illegal aliens.

5.  SCHLAGEL further said that she had spoken with two (2) other persons who had attempted to obtain employment through ECHANIZ.  According to SCHLAGEL, the two (2) persons were told by ECHANIZ that they needed "false papers" before they could be employed by RCI.

6.  On May 13, 2005, the ICE Law Enforcement Service Center (LESC), Williston, Vermont, provided your Affiant with information that they had received from an anonymous caller.  The anonymous caller informed the LESC that the Grand Traverse Resort and Spa, Acme, Michigan, is paying a smuggler to bring illegal aliens from Texas to Michigan, to work at the GTRS.  The LESC further quoted the anonymous caller as saying, "SANTIAGO brings them around."

7.  On June 15, 2005, your Affiant and Detective Ritter met Ms. Terrie Kopkau, Director of Human Resources, GTRS.  Ms. Kopkau confirmed that the GTRS Housekeeping Department contracts with RCI for a portion of its workforce.  Ms. Kopkau further confirmed that Santiago ECHANIZ is the RCI representative through which GTRS coordinated the hiring of RCI employees.  Ms. Kopkau subsequently provided your Affiant with an RCI employee list and photocopies of 51 U.S. Resident Alien cards (Form I-551) and Employment Eligibility Verification Forms (Form I-9) for those RCI employees at the GTRS.  According to Ms. Kopkau, ECHANIZ had personally given her the I-551 and I-9 forms for the RCI employees.

8.  These documents included copies of an I-9 and I-551 for Miguel MARTINEZ-Garcia, DOB: 04/14/1965.  Review of MARTINEZ' I-9 reflects that he utilized I-551 #A092317215 and SSAN #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 as a means of identification.  A copy of MARTINEZ' I-551, #A092317215, was attached to the I-9 provided by Ms. Kopkau.  MARTINEZ' I-551 number was subsequently queried in CIS and determined to be fraudulent, in that, #A092317215 is assigned to another person.  Also, it was determined that his SSAN did not belong to him.

9.  These documents also included a copy of a U.S. Resident Alien card (I-551) for Ofmara MALTOS, DOB:  09/12/1979; #A091209790.  Ms. Kopkau indicated that, although MALTOS was an employee of RCI and working at the GTRS, ECHANIZ had not provided her a copy of MALTOS' I-9.  MALTOS' I-551 number was subsequently queried in CIS and determined to be  fraudulent, in that #A09120 9790 is assigned to another person.

10.  On June 15, 2005, your Affiant and Detective Ritter conducted another interview with SCHLAGEL.  During this interview, SCHLAGEL related that in about May 2004, an RCI employee who had worked at GTRS had complained to her that he/she was not receiving fair payment from RCI for work performed.  Specifically, the employee said that RCI refused to pay overtime or holiday premium pay.  The person also told SCHLAGEL that ECHANIZ paid RCI employees, in cash, every Thursday, at a GTRS housing complex designated for RCI employees.  According to SCHLAGEL, the housing complex is located on Launter Road, in Williamsburg, Michigan.

11. On August 22, 2005, your Affiant met with Investigator Kevin Novorolsky, U.S. Department of Labor (DOL), Wage and Hour Division, Traverse City, Michigan.  Investigator Novorolsky informed your Affiant that DOL had recently investigated RCI, also known as ROSENBAUM- CUNNINGHAM International, Inc., for regulatory violations during the period from March 2003 to May 2004.  That investigation determined that Santiago ECHANIZ, as a representative of RCI, was responsible for recruiting, hiring and employing work crews at GTRS.  During the investigation, RCI employees at the GTRS were interviewed by the DOL and stated

that ECHANIZ had not asked them for any citizenship or immigration verification at the time of hire.

12.    From handwritten records kept by ECHANIZ, which provided the only available payroll information, the DOL determined that RCI had not paid the workers at GTRS either minimum wage or overtime.

13.    On September 12, 2005, your Affiant spoke by phone with Ms. Elaine Cappa, JP Morgan Chase Bank, Fraud Prevention and Investigation Unit, Columbus, Ohio. According to Ms. Cappa, JP Morgan Chase Bank had observed activity indicating the possible structuring of funds involving Bank One Account #135000297881. This account was opened on October 25, 2001, doing business as "Shockeye, Inc.," with the account signatory designated as Santiago ECHANIZ. The date of birth, SSAN, and home address of the signatory corresponded with those of the same ECHANIZ employed by RCI.

14.    Based on information received from Ms. Cappa, Affiant obtained bank records from JP Morgan Chase Bank for Shockeye Account #135000297881. Review of those banking records reflects that, between January 2004 and September 2005, the Shockeye account received approximately 170 wire transfers from Bank of America Account #003660771899 totaling about $1.2 million dollars. With the exception of only one (1) wire transfer, all the wire transfers sent from Bank of America Account #003660771899 to the Shockeye account were under $10,000; a majority of the wire transfers were for a sum of about $9,500. Your Affiant later determined, through the submission of a Grand Jury Subpoena that Bank of America Account #003660771899 belongs to RCI.

15.    Additional analysis of the Shockeye account revealed that the wired funds sent by RCI were being withdrawn, in a structured manner, through Shockeye account checks signed by Santiago ECHANIZ. The account checks are embossed with "Shockeye, Inc., 714 EASTGATE PL., Traverse City, MI. 49686." By way of example, between January 2004 and September 2005, ECHANIZ signed approximately 177 checks, the memo lines of which stated either " Payroll T.C." or just "T.C." Most of these checks were made payable to "CASH." Of the checks not payable to "Cash," about 35 were payable to either Ofmara MALTOS or Miguel MARTINEZ, who were apparently making payroll payments to the RCI workforce of illegal aliens at GTRS on behalf of ECHANIZ. None of the 177 checks were over $10,000, and many were for amounts in the range of $9,000. According to Ms. Kopkau, both MALTOS and MARTINEZ are listed by GTRS as being RCI "supervisors."

16.    On February 6, 2006, Ms. Kopkau provided your Affiant with a facsimile copy of an I-9, a SSAN card and a Michigan Identification card for a person identified as Joel Aaron RAMOS, a person hired by RCI on or about January 26, 2006, and placed at the GTRS. The documents had been provided to Ms. Kopkau by ECHANIZ.

17.    On February 14, 2006, your Affiant provided ICE Agent Thomas Miller with copies of RAMOS' I-9, SSAN card and Michigan Identification card. Agent Miller is conducting a separate Immigration investigation of RAMOS, and he had already determined that

RAMOS' SSAN was fraudulent.  On February 16, 2006, as part of his investigation, Agent Miller interviewed RAMOS concerning, among other things, RAMOS' employment history. RAMOS informed Agent Miller that he had worked for GTRS for about one (1) week, but no longer did.  RAMOS said that a friend had referred him to the GTRS.   RAMOS said that when he was applying for work with GTRS, he spoke to a female supervisor he knew only as "MARA."  RAMOS said that MARA had asked him whether he was "legal or illegal," and that when he told her he was illegal, she responded that RCI prefers to hire persons who are illegal because then there is no problem with taxes and they can pay in cash.  RAMOS said that soon after this conversation MARA introduced him to "SANTIAGO," and SANTIAGO copied his SSAN card and Michigan Identification.  Under the circumstances, Affiant believes that "MARA" is a reference to "Ofmara."

18.    The Michigan State Police (MSP) Law Enforcement Information Network (LEIN) indicated that ECHANIZ' address is 714 Eastgate Place, Traverse City, Michigan. Furthermore, MSP/LEIN information indicates that MALTOS' address is 714 Eastgate Place, Traverse City, Michigan, as well.

19.    On February 26, 2006, your Affiant and others conducted an ICE operation in which all the RCI employees at the GTRS were apprehended and interviewed by ICE.  It was determined that all the RCI employees, a total of 24, were undocumented illegal aliens.

20.    On February 26, 2006, ICE Agents Wesley Schoals and Miller conducted a post-Miranda interview of Miguel MARTINEZ.  MARTINEZ stated that prior to filling out his I-9 form for RCI in 2000, ECHANIZ had specifically asked MARTINEZ if he had valid immigration documents.  MARTINEZ had informed ECHANIZ he was in the country "illegally" and without documents.  MARTINEZ said ECHANIZ told him that he needed documents and told MARTINEZ to inform him when he had received those documents.  MARTINEZ then purchased both a fraudulent SSAN card and a fraudulent Resident Alien Card from an illegal document vendor.  Thereafter, when his Alien Card expired, he acquired another fraudulent card using the same false Alien Number in September 2004.  Both the fraudulent SSAN card and Resident Alien Card were recovered from MARTINEZ after the enforcement action.

21    Following the U.S. ICE enforcement action at GTRS on February 26, 2006, your Affiant and others conducted a post-Miranda interview of MALTOS-Trevino.  MALTOS admitted that she was in the U.S. illegally.  MALTOS said that in about 2002, she began work for RCI.  MALTOS said she presented a fraudulent U.S. Resident Alien Card and used a fraudulent SSAN to gain employment at RCI.  MALTOS further verified that she is ECHANIZ' girlfriend and has lived with him for about four (4) years.  MALTOS admitted that she took part in interviewing RCI employees and assisting employees with the completion of their I-9 forms. Also, MALTOS said she assisted with the submission of payroll statements to RCI in Florida for work performed by the RCI labor force at GTRS.

22.    On March 3, 2006, agents of U.S. ICE and Criminal Investigations Division, IRS, conducted a nationwide enforcement operation, executing Federal search warrants  at the home

of ECHANIZ in Traverse City, and the corporate offices of RCI, Inc. located in Palm Beach, Florida and Maitland, Florida. In addition, nine (9) seizure warrants for banking accounts associated with RCI, Inc., SHOCKEYE, Inc., ECHANIZ and MALTOS were issued by the U.S. District Court for the Western District of Michigan. The search warrants resulted in the discovery of numerous documents of evidentiary value related to Shockeye and RCI business operations. In addition, the seizure warrants resulted in the seizure of approximately $750,000 in funds traceable to the employment of illegal aliens at GTRS and at several other locations within the United States. The day before the execution of these warrants, and several days after the enforcement action, ECHANIZ surrendered five informal payroll ledgers covering the period from October 2001 through February 2006. These ledgers memorialize the payment of RCI employees at GTRS, and record the amount paid, the employee on whose behalf the amount was being paid, and the immediate recipient of the payment. Throughout these ledgers, the signature and/or initials of MARTINEZ appears not only as the recipient of payments to himself, but also as the recipient of payments on behalf of other identified RCI employees at GTRS.

23.     Based on the foregoing, your Affiant submits that there is probable cause to believe that both MALTOS and MARTINEZ participated with ECHANIZ in the employment of illegal aliens by RCI at GTRS in violation of 8 U.S.C. § 1324a(1)(A). Affiant submits that there is also probable cause to believe that MALTOS knowingly used a counterfeit U.S. Resident Alien card in violation of 18 U.S.C. § 1546(a). Finally, Affiant submits that there is probable cause to believe that MARTINEZ knowingly possessed both a fraudulent SSAN card and a fraudulent U.S. Alien Registration card, in violation of 18 U.S.C. §§ 1028(a)(6) and 1546(a) respectively.

JOHN A. ALPERS, Special Agent,
U.S. Immigration and Customs Enforcement

Subscribed and sworn before me,
this _10_ of March 2006.

HONORABLE JOSEPH G. SCOVILLE
United States Magistrate Judge